IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACK ANDREW LEDBETTER, JR.,

                        Plaintiff,                      OPINION AND ORDER

v.

                                                     18-cv-290-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                        Defendant.

---

      Pursuant to 42 U.S.C. § 405(g), plaintiff Jack Andrew Ledbetter, Jr., seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Ledbetter contends that remand is warranted because the administrative law judge ("ALJ") Peter Kimball erred (1) in discounting plaintiff's reported symptoms under SSR 16-3p; (2) by failing to explain how or why Ledbetter is capable of exertional demands of light work; and (3) by failing to give proper weight to plaintiff's treating physician Dr. Healy. Because the ALJ failed to provide adequate reasons for discounting Ledbetter's subjective complaints about pain and physical limitations and for rejecting portions of plaintiff's treating physician Dr. Healy's opinion, the court will reverse the denial of social security disability benefits and will remand for further proceedings consistent with this opinion.

BACKGROUND[1]

A. **Overview of Claim**

Plaintiff Jack Andrew Ledbetter, Jr., applied for social security disability benefits and supplemental income on October 7, 2013, claiming an alleged onset date of August 17, 2013. At the hearing with the ALJ, Ledbetter amended the alleged onset date to September 16, 2013, to coincide with his 50th birthday. Ledbetter was last insured on March 31, 2016. With a birth date of September 15, 1963, Ledbetter was an "individual closely approaching advanced age" at his amended disability onset date. Ledbetter has at least a high school education and is able to communicate in English. He has past relevant work as a welder, which is a medium exertional level job, and an autoclave operator, which is a heavy exertional level job. He claimed disability based on "bulging disc and neck problems" and "heart problems; afib." (AR 64.)

B. **ALJ's Decision**

ALJ Peter Kimball held a video hearing on January 13, 2017, at which Ledbetter appeared personally and by counsel. As of the alleged onset date, the ALJ found that Ledbetter suffered from the following severe impairments: "cervical degenerative disc disease, chronic lower back pain with lumbar disc bulge, atrial fibrillation." (AR 15.)[2] The

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #9.

[2] The ALJ also noted that the medical record revealed other physical conditions, including bilateral carpal tunnel syndrome, headaches, diabetes and shoulder impingement, but the ALJ did not find any of these conditions to be severe. The ALJ also considered whether plaintiff's depression and anxiety constitutes a severe impairment, evaluating the paragraph B criteria and finding no limitations with respect to the four functional areas. Plaintiff does not challenge either of these findings on appeal.

ALJ considered whether either of these conditions met one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, and concluded that they did not. (AR 17.)

Next, the ALJ concluded that Ledbetter had the residual functional capacity ("RFC") to perform light work, with the additional exertional limitations:

> Lifting and carrying 20 lbs. occasionally, 10 lbs. frequently, able to sit for 6 hours, stand for 6 hours and walk for 6 hours in an 8-hour workday, push and pull as much as can lift and carry[;] no more than occasional reaching overhead bilaterally, no more than occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, no more than occasional crawling[;] no work with exposure to unprotected heights, moving mechanical part, or operation of a motor vehicle.

(AR 18.)

In formulating this RFC, the ALJ considered Ledbetter's testimony about his pain and limitations, including that he could only stand for 15 to 20 minutes and could only sit for 20 to 30 minutes and that using his arms in front of him caused pain in his neck and shoulders. The ALJ then recounted the medical record to discredit this testimony. Specifically, the ALJ considered plaintiff's treatment with Patrick Healy, M.D., an orthopedist specialist, finding that his "physical examinations showed only limited findings, with muscle spasm and tenderness and neck discomfort but intact neurological function." (AR 19.) The ALJ placed little weight on Dr. Healy's off-work opinions because "his opinions were temporary pending further treatment and did not assess specific work-related limitations," specifically noting that these opinions were tied to Ledbetter's job as a welder and did not address "a complete inability to sustain any full time competitive work." (AR 19.) The ALJ also noted that he was discharged from Dr. Healy's clinic in November 2013.

The ALJ considered Ledbetter's physical therapy records, noting that despite plaintiff's testimony to the contrary, a September 2013 note indicated that he was "exercising an hour a day, walking for 20 to 25 minutes and doing core strengthening, scapular stabilization, and flexibility exercises for his neck and back." (AR 20.) Plaintiff reported that "this did not increase his pain and instead made him feel 'loosened up." (*Id.*) On examination, Ledbetter "showed limited cervical range of motion but full shoulder range of motion in that visit." (*Id.*)

The ALJ also relied on Dr. Healy completing a form supporting a crossbow permit, placing some weight on this opinion because "it was not focused on specific work-related limitations but some difficulty in drawing a bow is consistent with the objective medical evidence and the record as a whole." (*Id.*) The ALJ determined that Dr. Healy signing off on this form is consistent with "the light exertional level and occasional bilateral overhead reaching" limitations in the RFC. (*Id.*)

The ALJ also pointed to a medical record noting that Ledbetter told "his primary care provider in December 2013 that he continued working with some modifications to his work schedule, working largely as a supervisor." (AR 20.) This medical note was approximately 4 months after his alleged onset disability date. In January 2014, after being discharged from the orthopedic clinic, the ALJ noted that Ledbetter's primary care provider noted that Ledbetter was using tramadol with reasonable effect; was not in acute distress and showed no discomfort sitting in a chair; reported that his headaches were well-controlled; and that his condition "continued to be stable . . . despite the plan to pursue long-term disability and a referral to a neurosurgeon for an opinion." (AR 20.)

The ALJ also considered Dr. Healy's medical opinion form dated February 11, 2014, placing only partial weight on the opinion "because the opinion was based on regular examination of the claimant in a treatment context . . . but his conclusions were only partially consistent with the whole record regarding the claimant's physical functioning and the course of treatment." (AR 20 (citing Ex. 6F).) Specifically, the ALJ rejected Healy's opinion as to the exertional level and postural limits, ultimately concluding that "[t]hese limits are given little weight due to the lack of support from his physical examination findings, the limited and conservative course of treatment, or the claimant's activities of daily living including driving." (AR 20-21.)

The ALJ also considered the opinions of state agency medical consultants but placed only partial weight on these opinions. Specifically, the ALJ adopted the state agency medical consultants' limits to occasional overhead reaching bilaterally, but rejected the initial opinion noting difficulty reaching at or below shoulder level, placing greater weight on the reconsideration opinion instead. The court also adopted the state agency medical consultants' opinions regarding environmental limits. The ALJ also concluded that the evidence since the state agency medical consultants' review of the record "does not show worsening," specifically describing the August 2015 cervical spine MRI and the February 2016 lumbar spine MRI.

The ALJ also noted that the medical treatment from 2014 through 2016 were for other temporary, acute conditions, mainly GI and/or alcohol related, and those medical record reflect that his neck was "assessed as non-surgical"; his neck was "at baseline"; and that he was "able to get out and walk around, with no mention of limits due to pain." (AR

5

22.) The ALJ also considered plaintiff's self-reporting, describing a "high level of independence in a wide range of activities of daily living that are more consistent with the above residual functional capacity than with his overarching allegations of disability." (AR 22.) The ALJ also noted more restricted activities in a later function report (Ex. 8E), contrasting it with a more robust account of activities in an earlier report (Ex. 3E), casting doubt on the more recent report given that "[t]he record does not show worsening of his condition around that time to support increased limitations in activities of daily living." (AR 22.)

With the assistance of the vocational expert's testimony, the ALJ concluded that Ledbetter could not perform his past work as a welder and/or autoclave operator, but that there were other jobs in significant numbers in the national economy that Ledbetter could perform, including assembler, inspector / hand packager, and routing clerk. As such, the ALJ concluded that Ledbetter was not disabled.

## C. Medical Record

Plaintiff's challenges concern his degenerative disc disease and neck and back pain, and, therefore, the court will limit its review of the medical record to those relevant to his challenges.

Orthopedist Patrick Healy, M.D., treated Ledbetter for neck and low back, beginning in 2012. (AR 402.) At the beginning of treatment, Ledbetter was still working as a welder and taking Tramadol for pain. In December 2012, Dr. Healy completed a certification for a crossbow hunting permit at Ledbetter's request. In early 2013, prior to

6

his alleged onset disability date, Ledbetter was also seeing his treating physician Richard Nagler, M.D., for back pain, headaches and sleep difficulties.[3]

In July 2013, Ledbetter returned to Dr. Healy, complaining of primarily cervical pain but also lumbar pain and reporting that he was having trouble sleeping and was missing work. (AR 400.) Healy noted that it would be difficult for Ledbetter to continue working as a welder , but also noted that it would be difficult for him to qualify for "total disability" at this time. (*Id.*) On physical examination, other than noting "cervical trapezial muscle tightness," his strength and reflexes were all normal. Dr. Healy referred him to physical therapy. On August 8, 2013, Ledbetter saw Dr. Nagler, requesting an off-work excuse due to headaches caused by his cervical spine issues, which Nagler granted until August 21. (AR 359-61.) He noted Dr. Healy's physical therapy referral and encouraged Ledbetter to begin therapy soon.

Ledbetter received physical therapy from August 12, 2013, through September 12, 2013. In this initial evaluation, the physical therapist noted decreased strength in the shoulder area and "very remarkable soft tissue tightness" in the lower back and shoulder area. (AR 356.) On August 26, 2013, Ledbetter reported overdoing it on a home stationary bike, which exacerbated his pain. (AR 345.) The physical therapist also described that was "ambulating with a guarded gait" and "held his head quite forward

---

[3] In June 2013, Dr. Nagler referred Ledbetter to neurologist David Nye, M.D., to address sleep difficulties, headaches and complaints of carpal tunnel syndrome. Ledbetter reported a prior positive EMG show and on physical examination, Dr. Note noted weakness of grip but full range of motion. In August 2013, Ledbetter had right carpal tunnel release surgery and planned to have left release surgery later, though it is not clear from the record if that happened. (AR 336, 343.) Regardless, this is not a basis of plaintiff's challenges on appeal.

today." (*Id.*) An August 29, 2013, progress note indicated that his low back and neck pain has "improved overall" since beginning therapy, as evidenced by "improved core strength." (AR 343.) In a note dated September 5, 2013, Ledbetter reported "minimal change in his neck and low back pain since beginning therapy." (AR 340.) The physical therapist, however, reported seeing "an improvement in his overall endurance and exercise performance since beginning therapy." (*Id.*) The last note, dated September 12, 2013, described plaintiff's one hour of at home exercises, including walking for 20-25 minutes and core strengthening. (AR 336.) The note provides that Ledbetter "does not feel as though his home exercise program increases his pain. If anything, he does feel 'loosened up' following his exercise program." (*Id.*) As for the assessment, the physical therapist noted that his chronic low back and neck pain were "slightly improved" since the start of therapy. (*Id.*)

Ledbetter reported in his social security application that he stopped working on August 17, 2013. (AR 238.) On August 20, Ledbetter saw Dr. Healy again and reported that he had completed two therapy sessions. Ledbetter also reported that he had stopped working, but was hoping that physical therapy would "improve things to an acceptable level so that he can return to earning a living as a welder." (AR 399.) Dr. Healy's examination of Ledbetter showed "moderate muscle spasm particularly in the cervical paraspinal muscle groups limiting rotation, flexion, and extension and all which cause obvious discomfort." (*Id.*)

On September 6, 2013, Ledbetter returned to Dr. Healy after having underwent a cervical MRI, which reveled "multilevel degenerative disc disease with relative central

8

stenosis that is most noticeable at C5-6 and I believe C4-5," but Dr. Healy was awaiting the radiologist's review. (AR 397.) Ledbetter was to continue physical therapy, as Dr. Healy considered referral to pain clinic. A radiologist subsequently interpreted the MRI to show "[d]isc and bony changes from C3-4 through C5-6 as described above with the bony ridging at C5-6 possibly slightly flattening the right anterior aspect of the cord." (AR 416.)

On September 17, Ledbetter saw Dr. Healy again, where he reported that physical therapy exacerbated his pain. Dr. Healy referred him to a local pain clinic and advised him to speak to his supervisor about transitioning to a different occupation. On examination, Dr. Healy noted "no signs of nerve root irritation," but "continuing motor spasms of the cervical spine with restricted flexion extension and lateral rotation." (AR 396.) On October 15, after being hospitalized for two weeks due to a GI bleed and atrial fibrillation, Ledbetter returned to Dr. Healy to report that he had been seen at the pain clinic by Dr. Brendel, who had administered an epidural injection that day before. Nonetheless, he was experiencing a "fair amount of soreness in the neck" and Healy indicated that he "looks modestly uncomfortable today." (AR 395.)

On November 5, 2013, Ledbetter saw Dr. Healy again for follow-up of is low back and neck complaints. (AR 393.) Dr. Healy indicated that Ledbetter's cardiac issues complicated treatment for his persistent neck pain. He continued him on a narcotic medication. His physical examination remained unchanged. Dr. Healy also indicated that he recommended Ledbetter remain off work and apply for extended disability benefits or social security.

On December 17, 2013, Dr. Healy transferred Ledbetter's prescription medication management to Dr. Nagler because there is nothing further Dr. Healy could offer Ledbetter. In the note, Dr. Nagler indicates that Dr. Healy has recommended that Ledbetter seek a surgical opinion. (AR 451.) In that note, Dr. Nagler also indicated, "[t]he patient continues with some modification in his work scheduled, largely works as a supervisor." (*Id.*)

In a January 20, 2014, note from Dr. Nagler, Nagler reviewed Ledbetter's treatment history and indicated that his neck pain rendered him disabled from his prior work as a welder. As for his physical examination, Dr. Nagler noted, "[t]he patient is in no acute distress. No discomfort sitting in a chair." (AR 446.) Dr. Nagler indicated that he was referring him to neurosurgery, though Dr. Nagler stated that Ledbetter was "not eager to have surgery but agrees with me that having another specialty take a look at his current chronic and potentially disabling discomfort would be a good idea." (AR 446.) There is nothing in the record to suggest that Ledbetter saw a neurosurgeon.

On February 11, 2014, Ledbetter returned to Dr. Healy to discuss his social security disability benefits application. In the narrative, Dr. Healy indicated that "he is at a sedentary level, 10-lbs or less and he needs to restrict fixed position activity to 30 minutes or less at a time and two hours in the course of a workday." (AR 475.) Dr. Healy also completed a multi-page "medical source statement of ability to do work-related activities." (AR 469-74.) Dr. Healy limited Ledbetter to only occasionally lifting and carrying up to 10 lbs.; sitting standing or walking for 30 minutes at a time, and up to 2 hours each in an 8-hour workday; occasionally reaching, handling fingering and feeling, but never pushing

10

or pulling; and provided certain postural limitations. He also indicated that the current restrictions were present since August 2013.

In 2015 and 2016, plaintiff continued treatment with Dr. Nagler, but the focus was on GI issues and other health conditions and was not on his neck pain, though Dr. Nagler continued prescribing pain medication, namely gabapentin, Percocet and tramadol. On July 10, 2015, Nagler referred Ledbetter to a pain clinic for further management, but there is nothing in the record to suggest that Ledbetter follow-up with a pain clinic doctor.

An August 2015 cervical MRI showed "small right subforaminal disc protrusion with associated osteophytes at the right C5-6 level," but that there was "[n]o significant spinal canal narrowing at any level," and "[c]ervical spinal cord is negative and intact." (AR 479.) A February 2016 MRI of the lumbar spine showed no abnormality. (AR 485.)

Two state agency medical consultants reviewed Ledbetter's medical record, and both concluded that he could perform light work, with additional exertional restrictions. (AR 84-87 (Syd Foster, D.O., dated 1/13/14); AR 98-100 (Bernard Stevens, M.D., dated 6/13/14).)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the

evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As described above, Ledbetter contends that the ALJ erred in three respects: (1) in discounting plaintiff's reported symptoms under SSR 16-3p; (2) by failing to explain how or why Ledbetter is capable of exertional demands of light work; and (3) by failing to give proper weight to plaintiff's treating physician Dr. Healy. The court takes up each challenge in turn.

I. **Evaluation of Subjective Statements**

The agency has prescribed a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 (superseding SSR 96-7p); *see also* 20 C.F.R. § 416.929. If the ALJ answers this question affirmatively, then he will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-

12

related activities . . . ." SSR 16-3p, at *2.[4] When faced with a discrepancy between the objective evidence and the claimant's subjective complaints, the ALJ is to resolve the discrepancy by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4. When a court reviews the ALJ's assessment of the claimant's subjective complaints, the court looks to see whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A credibility determination is patently wrong if it is illogical or "lacks any explanation or support." *Id*.

Plaintiff raises several issues with the ALJ's treatment of the record in evaluating Ledbetter's credibility. First, plaintiff faults the ALJ's finding that Ledbetter's reported symptoms and limitations were "not entirely consistent" with the medical record. (Pl.'s Opening Br. (dkt. #13) 15.) Specifically, plaintiff contends that there were numerous errors in the ALJ's treatment of the medical record: (1) failed to consider Dr. Healy's findings of muscle spasms as supporting Ledbetter's complaints about reduced range of

---

[4] With the issuance of SSR 16-3p, the Social Security administration has indicated that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of symptoms." Social Security Regulation (SSR) 16-3p, at *2. Reflecting on this change in wording, the Court of Appeals for the Seventh Circuit has opined that it "is meant to clarify that administrative law judges are not in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). Thus, this court will continue to apply pre-SSR 16-3p circuit case law in reviewing an ALJ's evaluation of a claimant's subjective complaints.

13

motion; (2) failed to consider the September 6, 2013 cervical spine MRI; (3) discussed only one page of the physical therapy records that had a positive note about the home exercise program, ignoring other reports that PT had a worsening effect on his symptoms; (4) relied on a December 2012 crossbow hunting certification, which preceded his alleged onset disability date by nine months, without acknowledging the date of this certification; (5) relied on an errant medical record noting in December 2013 that Ledbetter was still working despite earnings reports and Ledbetter's testimony that he stopped working in September; and (6) mischaracterized Dr. Nagler's medical records as showing that Ledbetter's condition was "stable" after his release from Dr. Healy's clinic.

In response to this extensive argument, the Commissioner simply responds that the state medical consultants considered the evidence of muscle spasm, decreased range of motion and a September 2013 cervical MRI, and rejected plaintiff's claimed limitations, and that the ALJ reasonably considered evidence of work activity after the alleged onset date. (Def.'s Opp'n (dkt. #14) 6, 8.) The Commissioner, however, failed to offer any response to the other criticisms raised by plaintiff. Moreover, while the ALJ may rely on the state agency medical consultants to interpret the medical record and describe limitations, the ALJ placed only partial weight on the medical consultants, and, therefore it is unclear whether the ALJ adopted the state agency medical consultants' view of Dr. Healy's physical examination notes and the 2013 MRI results in discrediting Ledbetter's subjective reports.

While viewed in isolation, none of them may form an adequate basis to challenge the ALJ's credibility assessment, however, the multiple errors pointed out by plaintiff calls

14

into question whether the ALJ's consideration of the medical record in assessing Ledbetter's report of his symptoms and limitations lacked substantial evidence, or, at minimum, the ALJ engaged in improper cherry-picking. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014).

Ledbetter also argues that the ALJ relied improperly on Ledbetter's daily activities to discount his report of symptoms, in violation of circuit precedent. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("[T]he critical differences between activities of daily living and activities of a full-time job are that a person has more flexibility in scheduling the former than the latter, can get held from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."). The Seventh Circuit instructs that ALJs cannot equate the ability to perform daily activities with the ability to sustain competitive, full-time employment. The ALJ, however, did not run afoul of that rule; instead, he properly considered the level of activity in the two function reports Ledbetter completed, one from November 10, 2013 (AR 248-56) and one from April 2, 2014 (AR 280-87) and concluded that the level of activity was consistent with the ALJ's RFC rather than the more restricted level of activity Ledbetter testified to at the hearing. Ledbetter faults the ALJ for calling into question Ledbetter's more restricted account of his activities and abilities in the April 2014 report, completed less than 5 months after the earlier report, explaining that his activities were more limited because he had moved in with his girlfriend. (Pl.'s Br. (dkt. #13) 22.) While that certainly explains statements about his girlfriend helping him with meal preparation and laundry, it does not explain his account of increased limitations in his physical abilities, including that as of April 2014, he could only walk 50

15

yards before resting, in contrast to his November 2013 report that he could walk one-quarter mile.  The court rejects this specific challenge, although because the court is remanding for further consideration of whether the medical record is inconsistent with Ledbetter's subjective account of his limitations, the ALJ is free on remand to further consider whether Ledbetter's daily activities support a light work RFC.

**II. Basis for Light Work Restriction**

Next, Ledbetter contends that the ALJ erred by failing to explain or identify the medial support for finding light exertional ability.  Specifically, Ledbetter argues that the ALJ rejected Dr. Healy's opinion that Ledbetter was limited to sedentary work, and while the ALJ placed weight on certain portions of the state agency medical consultants' opinions, namely their overhead reaching, postural and environmental limits, the ALJ did not indicate that he placed weight on their finding that Ledbetter was capable of light work. (Pl.'s Opening Br. (dkt. #13) 25.)

In response, the Commissioner argues that "Plaintiff's argument that the ALJ did not credit the medical consultants' opinions that Plaintiff could do light work defies common sense." (Def.'s Opp'n (dkt. #14) 10.)  The portion of the opinion in which the ALJ describes why he only placed "partial weight" on these opinions, however, includes no discussion of the exertional limit.  As such, the court credits plaintiff's argument to a certain extent, although the record *does* contain a medical finding to support a light exertional finding.  On remand, the ALJ may develop the record further with respect to the medical opinion support for the exertional finding.

### III. Treatment of Dr. Healy's Opinion

Finally, Ledbetter challenges the ALJ's treatment of Dr. Healy's opinion that Ledbetter is limited to sedentary work, among other restrictions.[5] "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)). Generally, the opinions of a claimant's treating physician are "give[n] more weight" because he or she is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(d)(2) (2011).[6] If an ALJ chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistent and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2019).

In considering Dr. Healy's opinion about sedentary work and other exertional limits, including reaching, the ALJ explained that "[t]hese limits are given little weight due

---

[5] If the ALJ had limited Ledbetter to sedentary work with non-transferrable skills, Ledbetter would be deemed disabled under the agency's grid rule 201.14. 20 C.F.R Pt. 404, Subpt. P, App. 2, § 201.14.

[6] This regulation governs claims filed before March 27, 2017.

to the lack of support from his physical examination findings, the limited and conservative course of treatment, or the claimant's activities of daily living including driving." (AR 21.) The ALJ also noted that Ledbetter last saw Dr. Healy in November 2013, and there is no indication in the record that he saw another orthopedist or pain specialist after November 2013.

Ledbetter attacks each basis offered by the ALJ for discounting Dr. Healy's opinion. With respect to the physical examination findings, plaintiff argues that Dr. Healy found muscle spasms and decreased range of motion on physical examination, consistent with the objective MRI results and also consistent with a finding of pain upon moving his arms and reaching in front of him. In response, the Commissioner contends that the ALJ could discount Dr. Healy's opinion because for every limitation noted on the form he provided "the terse statement, 'pain, muscle spasm cervical spine'" as a justification, but as plaintiff notes in his reply brief, the ALJ did not state that he was discounting Dr. Healy's opinions because the form he completed was not robust enough or the reasons lacked sufficient detail. *See Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) ("[T]he Commissioner cannot defend the ALJ's decision using this rationale directly, or by invoking an overly broad conception of harmless error, because the ALJ did not employ the rationale in his opinion.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

Plaintiff also faults the ALJ for relying on Ledbetter's conservative treatment and failure to see another orthopedist or pain clinic specialist after his appointment with Dr. Healy. Plaintiff argues that the ALJ should not fault him for pursuing a conservative treatment plan absent some discussion of what kind of treatment would be appropriate for

18

him to pursue, especially in light of Dr. Healy's opinion that he was not an "ideal candidate" for surgery. (Pl.'s Opening Br. (dkt. #13) 30 (citing AR 448).) While perhaps a fair criticism, as the Commissioner argues in response, the record reflects that Ledbetter did not even seek a consultation with a neurosurgeon, and as such, the ALJ, consistent with one of the state agency medical consultants, appropriate relied on his failure to seek an opinion in discounting his claims on pain.

Finally, as for the ALJ's reference to driving, here, too, plaintiff contends that the ALJ cherry-picked relying on this activity but failing to consider Ledbetter's testimony that he is limited in driving due to stiffness and soreness in his neck and back. For the reasons described above in assessing credibility, the court agrees with plaintiff that the ALJ's treatment of the medical record and other evidence contains sufficient errors or breaks in the logical bridge to call into question the ALJ's discounting of Ledbetter's complaints of pain and limitations. As such, on remand the ALJ should also reconsider his treatment of Dr. Healy's opinion.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Jack Andrew Ledbetter, Jr.'s application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the opinion set forth above.

2) The clerk's office is directed to enter judgment in plaintiff's favor and close this case.

Entered this 29th day of September, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge